Ronald Karz
State Bar #134764
MUELLER LAW, PLLC
404 W. 7th Street
Austin, Texas 78701
(512) 478-1236
ronald.karz@muellerlaw.com
Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT for
## the SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA
*ex rel.* [UNDER SEAL],

    Plaintiffs,

        v.

[UNDER SEAL],

    Defendants.

Civ. Action No. **'21CV243  AJB AGS**

**QUITAM COMPLAINT**
**FILED UNDER SEAL**
**PURSUANT TO**
**31 U.S.C. § 3730(b)2**
**DEMAND FOR JURY TRIAL**

Ronald Karz
State Bar #134764
MUELLER LAW, PLLC
404 W. 7th Street
Austin, Texas 78701
(512) 478-1236
ronald.karz@muellerlaw.com

Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT for
## the SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* Kathryn Moore | Civ. Action No. _____ |
| Plaintiffs, | **QUITAM COMPLAINT FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)2 DEMAND FOR JURY TRIAL** |
| v. | |
| SYNERGY ONE LENDING, INC., MUTUAL OF OMAHA MORTGAGE, INC, and MUTUAL OF OMAHA MORTGAGE, LLC., | |
| Defendants. | |

## COMPLAINT

On behalf of the United States of America, Relator Kathryn Moore files this *qui tam* Complaint against Defendants SYNERGY ONE LENDING, INC., MUTUAL OF OMAHA MORTGAGE, INC, and MUTUAL OF OMAHA MORTGAGE, LLC., and alleges as follows:

## INTRODUCTION

1.      This is an action brought by Relator Kathryn Moore to recover treble damages and civil penalties on behalf of the United States of America arising from an unlawful scheme by

Defendants SYNERGY ONE LENDING, INC., MUTUAL OF OMAHA MORTGAGE, INC., and MUTUAL OF OMAHA MORTGAGE, LLC. (collectively "Defendants") in violation of the Truth in Lending Act ("TILA") and the False Claims Act ("FCA").

2.      Specifically, Defendants steer mortgage customers towards loans with more onerous terms when doing so is more profitable to the Defendants.  Defendants accomplish this by structuring the loan originators' commissions to incentivize the unlawful practice of steering.  This is a violation of the TILA, 15 U.S.C. §1601 *et seq.*

3.      Because Defendants falsely certified that they disclosed the availability of more favorable loans to the customers this is also a violation of the FCA, 31 U.S.C. § 3729 *et seq.*.

4.      The estimated total damages to the United States from these false and fraudulent claims and statements are significant.

## PARTIES

5.      Defendant Synergy One Lending, Inc. ("Synergy") is Delaware corporation with its headquarters at 3131 Camino Del Rio N #150 in San Diego, CA 92108.

6.      Synergy is a national mortgage lender authorized to operate in forty-eight states.

7.

8.      On information and belief, Relator estimates that approximately one-third of Synergy's consumer mortgage loans are federally backed via the Federal Housing Administration ("FHA") or the Department of Veterans' Affairs ("VA").

9.      Mutual of Omaha Mortgage, Inc. and Mutual of Omaha Mortgage, LLC (collectively: "Mutual") are a Delaware corporation and limited liability company respectively.

10.     Mutual is a national mortgage lender operating in twenty-three states.

11.     On information and belief, Mutual purchased Synergy in 2013.

12. On information and belief, Mutual and Synergy split in or around June 2020 when a management-led team of investors purchased Synergy One from Mutual.

13. Mutual maintains its corporate headquarters at 3131 Camino Del Rio N #1100 in San Diego, CA 92108.

14. Relator Kathryn Moore was a mortgage loan originator for the Defendants from October 2018 until May 2020. Relator's primary duties involved assisting consumers select and apply for mortgages. Relator had ten years of experience in the mortgage loan industry prior to working for the Defendants.

## JURISDICTION AND VENUE

15. Venue and jurisdiction are the same under the FCA. 31 U.S.C. § 3732. An action may be brought in any judicial district in which any Defendants may be found or in which any proscribed act occurred. 31 U.S.C. § 3732(a).

16. The United States District Court for the Southern District of California has jurisdiction and venue for any Complaint brought in the matter because one of the Defendants is located in this district and many of the proscribed acts occurred in this district.

17. Relator is unaware that the allegations in this Complaint have been publicly disclosed. Further, to the extent that any of the information in this Complaint has been publicly disclosed, Relator's allegations in this Complaint are not based on such public disclosures.

18. Additionally, Relator is an original source of the information upon which Relator's allegations are based because Relator has knowledge that is independent of and materially adds to any allegations or transactions that may have been publicly disclosed.

19. Pursuant to 31 U.S.C. § 3730(b)(2), the Relator must provide the Government with a copy of the Complaint and/or a written disclosure of substantially all material evidence and material information in their possession contemporaneous with the filing of the Complaint.

20.     Relator has complied with this provision by serving his pre-suit Disclosure Statement with attached exhibits upon Joseph Price, Esq., Assistant United States Attorney for the Southern District of California.

21.     In further compliance with 31 U.S.C. §3730(b)(2), relator shall, contemporaneously with the filing of this Complaint, serve copies of this Complaint upon the United States Attorney for the Southern District of California and on the Attorney General of the United States.

22.     In further compliance with 31 U.S.C. § 3730(b)(2), this Complaint is being filed *in camera* and will remain under seal for a period of at least sixty days and shall not be served on the Defendants until the Court so orders.

## LEGAL FRAMEWORK

### I.     THE FEDERAL FALSE CLAIMS ACT

23.     Originally enacted in 1863, Congress substantially amended the FCA in 1986. The 1986 amendments enhanced the Government's ability to recover losses sustained as a result of fraud against the United States.

24.     Further clarifying amendments were adopted in May 2009 and March 2010. The FCA imposes liability upon any person who "knowingly presents, or causes to be presented [to the Government] a false or fraudulent claim for payment or approval;" or "knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim;" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. 3729(a)(1)(A), (B), (G).

- 4 -

25.   Any person found to violate these provisions is liable for a civil penalty of up to $11,000 for each such false or fraudulent claim, plus three times the amount of the damages sustained by the Government.

26.   Significantly, the FCA imposes liability where the conduct is merely "in reckless disregard of the truth or falsity of the information" and further clarifies that "no proof of specific intent to defraud is required." 31 U.S.C. 3729(b)(1).

27.   The FCA also broadly defines a "claim" as one that includes "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that — (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government — (i) provides or has provided any portion of the money or property requested or demanded; or (ii) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2)(A).

28.   A false statement or course of action is actionable under the FCA when the defendant falsely certifies that it has complied with a statute or regulation, the compliance with which is a condition for participation in a Government-funded program.

29.   The FCA empowers private persons with information regarding a false or fraudulent claim against the Government to bring an action on behalf of the Government and to share in any recovery – i.e.  a *qui tam* provision.

30.     The complaint must be filed under seal without service on any Defendants. The complaint remains under seal while the Government conducts an investigation of the allegations in the complaint and determines whether to intervene in the action. 31 U.S.C. § 3730(b).

**II.      TRUTH IN LENDING ACT**

31.     Congress originally enacted the TILA in 1968 to assist consumers in their dealings with lenders and creditors.  Some of the most important aspects of the Act concern information that must be disclosed to a borrower prior to extending credit such as the annual percentage rate, the term of the loan and the total costs to the borrower.  The TILA requires that this information be conspicuous on documents presented to the borrower before the loan can be made.

32.     The specific rules governing mortgage lending are contained in "Regulation Z". 12 C.F.R. 1026.  Regulation Z prohibits certain practices relating to payments made to compensate mortgage brokers and other loan originators. The goal of the amendments is to protect consumers in the mortgage market from unfair practices involving improper compensation paid to loan originators.

33.     Regulation Z prohibits a loan originator from "steering" a consumer to a lender offering less favorable terms to increase the loan originator's compensation.

34.     The loan originator can avoid the prohibition on steering by meeting the safe harbor conditions stipulated in the regulation.  Specifically, the loan originator must obtain and present to the consumer loan options from a number of the creditors with which the originator regularly does business.  Here, the Defendants did not meet the safe harbor conditions.

**III.     FEDERALLY-BACKED MORTGAGE PROGRAMS**

35.     The Federal Government employs a variety of methods to encourage lenders to extend credit to consumers wishing to purchase a home.  Among the more common or well-known methods are FHA Loans and VA Loans.

36.     FHA loans are mortgages that are insured by the Federal Housing Administration. The program originated during the Great Depression when the rates of foreclosures and defaults rose sharply among lower-income Americans.  Congress created the program to insure lenders against their borrowers defaulting on the mortgage loan thus encouraging lenders to continue lending to high-risk, low-income borrowers.

37.     VA loans are mortgages insured by the Department of Veterans' Affairs.  The VA loan program is designed to encourage lenders to extend credit to veterans seeking to purchase a home by insuring the loan against default thereby mitigating the risk to the lenders.

38.     FHA and VA loans include a number of eligibility requirements for the borrowers such as minimum income and down payment.  The programs also include eligibility requirements for the lenders.  Of key importance here, to participate in the FHA or VA loan programs, the lender must certify compliance with the TILA.  In particular, a lender must certify, for reach loan for which it seeks federal backing through the FHA or VA programs, that the loan was not obtained through "steering" or any other violation of the TILA.  A false certification of compliance by a lender is not only a violation of the TILA, but also gives rise to liability under the FCA.

## IV.   MORTGAGE REVENUE BOND LOANS

39.     A Mortgage Revenue Bond Loan ("bond loan") is a type of loan to a homebuyer where the cost of borrowing is partially subsidized by a state or municipal bond.  The government uses the money raised from the sale of mortgage revenue bonds to lower the cost of buying a home for community members who otherwise cannot afford it.  Benefits to the borrower may include lower interest rates and down-payment assistance.  Lenders that would otherwise not have lent to low and middle-income applicants because of the higher risk of default, take the government backing to extend home loans to the riskier applicants thereby increasing home ownership.

## DEFENDANT'S IMPROPER CONDUCT

40.     Defendants unlawfully structured commissions for loan originators to encourage those originators to steer consumers towards more onerous loans.

41.     Relator first learned of this improper conduct on March 26, 2020, when she was informed by upper management of the changes made to her commissions. Specifically, Defendants informed relator and other loan officers that their commission rates for bond loans would be decreased. Defendants explained that if loan originators wanted to maximize their commissions, they would have to push consumers into other conventional loans with terms that are unfavorable to the consumer.

42.     According to the Relator, management designed the new incentive structure to pressure loan originators to steer consumers towards loans that were more onerous to them but much more profitable for the company.

43.     According to the Relator, her refusal to go along with the Defendants' scheme led to a 62% reduction in her commissions.

44.     On or before March 30, 2020, Defendants circulated a document entitled "Loan Officer Compensation Addendum" which indicated that compensation on all bond loans would be lowered to 50 basis points or .5% of the value of the loan.

45.     According to Relator, Defendants made this change to pressure loan officers to steer consumers away from bond loans and towards conventional loans because the latter were more profitable for the company even though they were less favorable for the consumer.

46.     Internal emails reveal that immediately following the change in the commission structure, loan officers started converting bond loan agreements, including FHA and VA loans, to conventional loans or "straight product" that were less favorable to the consumers because they

did not include down payment assistance. These products were less favorable to the consumers but more favorable to the Defendants.

47. On March 26, 2020, Executive Vice President Aaron Nemec circulated a company-wide email explaining that "Mutual is not funding another state bond loan whether approved or locked or not [because they] don't believe we'll be able to sell it as mentioned on the calls earlier."

48. On the same email, Aaron Nemec further explained that they could no longer fund bond loans because the group of management-led investors who were planning to purchase Synergy away from Mutual would bear the higher risk associated with such loans.

49. Many individual managers at Synergy had a personal incentive to discontinue bond loans because they were personally invested—in some cases, for $100,000.00—in the Synergy buyout.

50. Aaron Nemec further explained that this higher risk "would be a material risk we would need to disclose to all [investors]...and it could negatively impact the...investment which is on schedule to close next Tuesday."

51. In effect, Aaron Nemec acknowledged in the email of March 26 that Defendants intended to discontinue bond loans, including those that had already been approved and locked, because they did not want to jeopardize the upcoming purchase of Synergy by a team of management-led investors.

52. Contrary to what Aaron Nemec claimed about Mutual's concern that they would not be able to sell bond loans once originated, the Idaho Housing and Finance Association ("IHFA") issued a "Covid-19 Update" March, 2020, reassuring lenders that "[w]ith ample liquidity, IHFA is well prepared to purchase [bond] loans in accordance with our program requirements."

53.     On March 27, 2020, Executive Vice President Aaron Nemec circulated a company-wide email memorializing the Defendants' policy announced in a conference call that same day. In the email, Aaron Nemec stated that the company "will not accept any new bond [loan] applications…until further notice." According to Relator, the reason for this policy was precisely to steer customers to less favorable loans. While no mortgage lender is legally required to offer bond loans to its customers, Regulation Z, explained above, requires that a lender disclose to a potential borrower if other, more favorable loan products, are available in the marketplace.

54.     According to Relator, Defendant did not disclose to its borrowers that bond loans were offered by other lenders and instead pressured those borrowers, who in many cases were under tight time constraints, into less favorable loans.

55.     Also on March 27, 2020, Underwriting Manager Kim Bird wrote an email to the Idaho Sales team with instructions on how to convert government-backed bond loans to "a straight product." The email does not instruct the sales team to present the consumers with alternative options, as required by Regulation Z, before converting the loans.

56.     The email of March 27, 2020 lists a number of consumers whom the Defendants steered away from FHA bond loans, in violation of Regulation Z. These consumers included, but were not limited to:

      a.   Adrian Blanco

      b.   Dean T. Blanton

      c.   Javier Perez Duron

      d.   Justin Kyle Earl

      e.   Travis Hull

      f.   Timothy J. Jensen

g.  Cassandra Lachapelle

h.  William Carroll McCulloch

i.  Sarah McGuire

j.  Eileen Smith

57.    On March 30, 2020, Aaron Nemec circulated another company-wide email further memorializing Defendants' new policy.  According to this email, commissions on all bond loans would be lowered to 50 basis points, or .5% of the value of the loan.  As explained above, Defendants established this policy to pressure loan officers to steer consumers into other types of loans with more onerous terms.

58.    According to Relator, managers were financially incentivized to not call out the illegal activity on bond loan commission because they were financially invested in the company. Any bond loan that the Defendants could not remove from its books by selling to a third party would be a liability to the company and the managers invested in it.

59.    As witnessed by the Relator and further evidenced by communications referenced above, Defendants unlawfully structured commissions for loan originators to encourage those originators to improperly steer consumers towards more onerous loans.

## DEFENDANTS' IMPROPER CONDUCT CAUSED SUBSTANTIAL DAMAGE TO THE GOVERNMENT.

60.    Defendants violated the TILA by knowingly and improperly steering their customers to less favorable loans without informing them of more favorable alternatives as required by law.

61.    Defendants further violated the TILA by structuring the commissions of their loan originators to encourage the originators to steer the consumers towards less favorable loans.

62.     Defendants then violated the FCA by falsely certifying to the Government that the loans were obtained in compliance with the requirements of the TILA.  Through these schemes, Defendants caused the United States to incur millions of dollars in damages.

## CONCLUSION

63.     The false claims alleged herein pertain to the submission of false or fraudulent claims to the United States Government concerning Government-backed mortgage insurance programs.

64.     It is alleged that the aforementioned conduct violates the False Claims Act, including, but not limited to, the following: 31 U.S.C. § 3729(a)(1)(A); 31 U.S.C. § 3729(a)(1)(B); 31 U.S.C. § 3729(a)(1)(C); 31 U.S.C. § 3729(a)(1)(D); 31 U.S.C. § 3729(a)(1)(E); 31 U.S.C. § 3729(a)(1)(F); and 31 U.S.C. § 3729(a)(1)(G).

65.     In light of the foregoing, Defendants are liable to the United States for civil penalties and statutory damages.

66.     The estimated total damages to the United States from the false and fraudulent claims and statements made as a result of the aforementioned actions are significant.

## CLAIMS FOR RELIEF

### COUNT I
### False Claims Act: Presentation of False Claims
### 31 U.S.C. § 3729(a)(1)(A)

67.     Relator repeats and incorporates by reference the allegations above as if fully contained herein.

68.     As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, Defendants have "knowingly present[ed], or cause[d] to be presented, to an officer

or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval" in violation of 31 U.S.C. § 3729(a)(1).

69.     As a result of Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial, and the United States is entitled to at least $5,000 and as much as $11,000 for each such false or fraudulent claim submitted on or before November 2, 2015 and up to $21,563 for violations committed after November 2, 2015, plus three times the amount of the damages sustained by the Government for each and every violation of 31 U.S.C. § 3729 arising from Defendants' unlawful conduct as described herein. See 28 C.F.R. §§ 85.3(a)(9).

## COUNT II
### False Claims Act: Making or Using a False Record
### or Statement to Cause Claim to be Paid
### 31 U.S.C. § 3729(a)(1)(B)

70.     Relator repeats and incorporates by reference the allegations above as if fully contained herein.

71.     As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants have "knowingly ma[de], use[d], or cause[d] to be made or used, a false record or statement – *i.e.*, the false certifications and representations made or caused to be made by the Defendants – to get a false or fraudulent claim paid or approved by the Government" in violation of 31 U.S.C. § 3729(a)(2).

72.     As a result of Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial, and the United States is entitled to at least $5,000 and as much as $11,000 for each such false or fraudulent claim submitted on or before November 2, 2015 and up to $21,563 for violations committed after November 2, 2015, plus three times the amount of the damages sustained by the Government for each and every

violation of 31 U.S.C. § 3729 arising from Defendants' unlawful conduct as described herein. See 28 C.F.R. §§ 85.3(a)(9).

### COUNT III
**False Claims Act: Conspiracy to Commit a Violation**
**U.S.C. § 3729(a)(1)(C)**

73.     Relator repeats and incorporates by reference the allegations above as if fully contained herein.

74.     As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants and its agents have "conspire[d] to commit a violation of subparagraph (A), (B), (D)…or (G)" in violation of 31 U.S.C. §3729(a)(1)(C).

75.     As a result of Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial, and the United States is entitled to at least $5,000 and as much as $11,000 for each such false or fraudulent claim submitted on or before November 2, 2015 and up to $21,563 for violations committed after November 2, 2015, plus three times the amount of the damages sustained by the Government for each and every violation of 31 U.S.C. § 3729 arising from Defendants' unlawful conduct as described herein. See 28 C.F.R. §§ 85.3(a)(9).

### COUNT IV
**False Claims Act: Knowingly Delivers Less Than All of**
**Government's Property in Defendants' Possession**
**U.S.C. §3729(a)(1)(D)**

76.     Relator repeats and incorporates by reference the allegations above as if fully contained herein.

77.     As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants "ha[d] possession, custody, or control of property or money used,

or to be used, by the Government and knowingly deliver[ed], or cause[d] to be delivered, less than all of that money or property" in violation of 31 U.S.C. §3729(a)(1)(D).

78.     As a result of Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial, and the United States is entitled to at least $5,000 and as much as $11,000 for each such false or fraudulent claim submitted on or before November 2, 2015 and up to $21,563 for violations committed after November 2, 2015, plus three times the amount of the damages sustained by the Government for each and every violation of 31 U.S.C. § 3729 arising from Defendants' unlawful conduct as described herein. See 28 C.F.R. §§ 85.3(a)(9).

**COUNT V**
**False Claims Act: Knowingly Conceals or Improperly Avoids an Obligation**
**to Pay Money to the Government**
**U.S.C. §3729(a)(1)(G)**

79.     Relator repeats and incorporates by reference the allegations above as if fully contained herein.

80.     As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases and obligation to pay or transit money or property to the Government: in violation of 31 U.S.C. §3729(a)(1)(G).

81.     As a result of Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial, and the United States is entitled to at least $5,000 and as much as $11,000 for each such false or fraudulent claim submitted on or before November 2, 2015 and up to $21,563 for violations committed after November 2, 2015,

plus three times the amount of the damages sustained by the Government for each and every violation of 31 U.S.C. § 3729 arising from Defendants' unlawful conduct as described herein. See 28 C.F.R. §§ 85.3(a)(9).

**PRAYERS FOR RELIEF**

WHEREFORE, for each of these claims, the *qui tam* Plaintiff requests the following relief from each of the Defendants, jointly and severally, as to the federal claims:

- Three times the amount of damages that the Government sustains because of the acts of Defendants;

- A civil penalty of for each violation;

- An award to the *qui tam* Plaintiff for collecting the civil penalties and damages;

- Award of an amount for reasonable expenses necessarily incurred;

- Award of the *qui tam* Plaintiff's reasonable attorneys' fees and costs;

- Interest; and

- Such further relief as the Court deems just.

**DEMAND FOR JURY TRIAL**

Relator hereby demands a trial by jury as to all issues.

By: _____
Ronald Kartz, Esq.
MUELLER LAW OFFICES
404 West 7th Street
Austin, X 78701
Telephone: (512) 478-1236
Facsimile: (512) 478-1473

Ronald.karz@muellerlaw.com

William L. Hurlock, Esq.
MUELLER LAW LLC
363 Bloomfield Avenue
Suite 2-C
Montclair, New Jersey 07042
Telephone:  (973) 233-8290
Facsimile: (973) 509-9521
William.Hurlock@muellerlaw.com

*ATTORNEYS FOR RELATOR*

Do not ship liquids, blood, or clinical specimens

**FedEx**

Extremely Urgent

**XH SDMA**

TRK# 8531 7763 4596

TUE – 09 FEB AA
PRIORITY OVERNIGHT

92101
CA-US
SAN

RECEIVED
FEB 09 2010

Rt 359
st 16

3
10:30
C

Pkg Retrieval Copy

**FedEx** US Airbill
Express                    853

Packages up to 150 lbs.

2/8/21

Sender's FedEx
Account Number  165061

William L. Hudak, Esq.           Phone 973 233-8290

Company  Shuttle Law, LLC

Address  363 Bloomfield Ave      Suite 2-C

City  Montclair        State NJ   ZIP 07042

**2  Your Internal Billing Reference**

**3  To**

Recipient's
Name  Clerk                      Phone 619 557-5600

Company  U.S. District Court - Southern District of California

Recipient's
Address  333 West Broadway       Suite 420

City  San Diego       State CA   ZIP 92101

**3** FedEx 2Day    **20** FedEx Express Saver

**4b  Express Freight Service**          Packages over 150 lbs.

**7** FedEx 1Day Freight   **8** FedEx 2Day Freight   **83** FedEx 3Day Freight

**5  Packaging**
**6** FedEx Envelope   **2** FedEx Pak   **3** FedEx Box   **4** FedEx Tube   **1** Other

**6  Special Handling**
SATURDAY Delivery   **1** HOLD Weekday   **31** HOLD Saturday

Does this shipment contain dangerous goods?
**No**  Yes  As per attached Shipper's Declaration   Yes Shipper's Declaration not required   **6** Dry Ice
Dangerous goods cannot be shipped in FedEx packaging.   Cargo Aircraft Only

**7  Payment**  Bill to:
**Sender** Acct No.   **2** Recipient   **3** Third Party   **4** Credit Card   **5** Cash/Check

**Total Packages**   **Total Weight**        **Total Charges**

**8  Sign to Authorize Delivery Without a Signature**

8531 7763 4596

467